# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2010

No. 09-10734

Lyle W. Cayce
Clerk

DARRELL D. MINTER, As Receiver,

Plaintiff-Appellee
Cross-Appellant,

v.

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,
formerly known as American National Fire Insurance Company,

Defendant-Appellant
Cross-Appellee

Appeals from the United States District Court
for the Northern District of Texas
No. 3:02-CV-2040

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:[*]

The district court held that a policy issued by Great American Insurance

Company of New York ("Great American") includes coverage for a exemplary-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-10734

damage award in a state tort action. Great American appeals the portion of the judgment ordering it to pay exemplary damages, arguing that such coverage violates Texas public policy. The receiver for the state-court plaintiff cross-appeals, urging that the district court offset the judgment by too great an amount based on a partial settlement agreement.

We conclude that coverage of the exemplary-damage award in this case violates Texas public policy and that the district court correctly calculated the offset. We therefore REVERSE IN PART, AFFIRM IN PART, and REMAND for recalculation of the judgment.

I.

In 1996, Jerry Largent, a truck driver for JTM Materials ("JTM"), pulled out of a private driveway in a tractor-trailer owned by Hammer Trucking Company ("Hammer") on lease to JTM. The trailer was struck by a vehicle driven by Grant Morris. Both drivers were intoxicated. Morris was injured. JTM had a primary truckers insurance policy with St. Paul Fire & Marine Insurance Company ("St. Paul") for up to $1 million and an excess umbrella policy with Great American for coverage over the $1 million primary policy, up to $25 million ("the umbrella policy").

Morris sued Largent, Hammer, and JTM in Texas state court. Before trial, JTM was granted summary judgment. During trial, testimony was elicited that showed that Largent, who pled guilty to DWI in connection with this accident, had two prior convictions for DWI (in 1980 and 1994). Largent admitted that, at the time of the accident, (1) he was intoxicated; (2) he realized that he was a danger "to the folks on the highway having drove [sic] an 18-wheeler while [he was] intoxicated;" and (3) he "knew it was possible" that "someone might get hurt because [he was] intoxicated and driving a truck." A jury awarded $2,633,170 in actual damages, plus exemplary damages of $1,650,000 against Largent and $300,000 against Hammer.

No. 09-10734

Following trial, Morris filed an action to appoint Darrel Minter as receiver to collect insurance benefits owed to cover the judgment against Largent. The receiver settled with St. Paul for $1.9 million ("the St. Paul settlement"), releasing Hammer, JTM, and St. Paul from all claims.

Shortly thereafter, the receiver filed this federal suit against Great American for recovery of the remainder of the insured judgment claims. The district court granted summary judgment to Great American, finding that Largent was not an "insured" under Great American's policy with JTM. We reversed in part and remanded for trial on the issue of whether Largent was an insured under the umbrella policy because he was a "permissive user" of the truck. *Minter v. Great Am. Ins. Co.*, 423 F.3d 460 (5th Cir. 2005).

At trial, the jury found Largent was a permissive user under Great American's policy making him an insured under the policy. The court issued a judgment of $8,160,342.29, representing the value of the state court judgment against Largent, plus interest, offset by $1.9 million, the amount of the St. Paul settlement.

Great American filed a motion for new trial or to amend the judgment on the ground that exemplary damages were not covered by the umbrella policy, and also seeking clarification of the post-judgment interest award. The court denied the motion for a new trial, holding, *inter alia*, that Texas public policy does not prohibit insurance coverage of exemplary damages in this case. The district court concluded that the "ongoing, systemic, extreme circumstances" it deemed necessary to avoid indemnity of exemplary damages were not present. The court also awarded costs and attorneys fees to the receiver.

Great American appeals only that portion of the judgment holding that the exemplary damages awarded against Largent are insurable under Texas public policy. The receiver cross-appeals, arguing that the terms of the St. Paul settlement required the court offset the judgment by only $1 million––the

3

No. 09-10734

amount of coverage under the St. Paul policy—not the full $1.9 million paid by St. Paul.

## II.

Whether Texas public policy permits Great American to indemnify Largent for the state exemplary damages award is a question of state law. Therefore, we review that issue de novo. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149 (5th Cir. 2004).

## A.

In Texas there is a two-step process for determining whether a exemplary-damage claim is insurable:

> First, we decide whether the plain language of the policy covers the exemplary damages sought in the underlying suit against the insured.
>
> Second, if we conclude that the policy provides coverage, we determine whether the public policy of Texas allows or prohibits coverage in the circumstances of the underlying suit. We look first to express statutory provisions regarding the insurability of exemplary damages to determine whether the Legislature has made a policy decision. If the Legislature has not made an explicit policy decision, we then consider the general public policies of Texas.

*Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 655 (Tex. 2008) (citations omitted). Great American concedes that the plain language of the umbrella policy allows for coverage of exemplary damages. Neither party argues that the Texas Legislature has made an explicit policy decision relevant to this case. What remains then, is to "consider the general public policies of Texas." *Id.* Great American urges us to adopt a rule that indemnity for exemplary damages awards against individuals always violates public policy. Minter urges us to adopt the district court's reasoning.

It is unnecessary to announce a broad rule in order to decide this case. The application of *Fairfield* in this case is straightforward. This accident

4

represented Largent's *third DWI conviction*. Largent, then, was a repeat offender who clearly has not learned his lesson. By his own admission, he knew he was a "danger to the folks on the highway" driving around drunk in an 18-wheeler and that it was "possible someone might get hurt." Under the facts of this case, Texas public policy prohibits Great American from indemnifying the exemplary damages award here. Any exemplary damages must therefore be recovered from Largent himself and not from Great American.

## III.

We turn to the receiver's cross-appeal. The district court offset the judgment by $1.9 million, the full amount of the St. Paul settlement. The receiver contends that was error because the settlement agreement required the court to offset the judgment by only $1 million, the value of the St. Paul primary policy. Thus, the receiver argues, the judgment should be increased by $900,000. We disagree. The district court properly applied the plain language of the settlement agreement in offsetting by the full $1.9 million.

The receiver points to two portions of the settlement agreement. Paragraph 3 states, "It is expressly understood that this partial release of the Judgment does not in any way release . . . any obligation of Largent to pay any portion of the Judgment *in excess of the St. Paul policy limits*." (emphasis added). Likewise, ¶9 states, "In return for . . . $1,900,000 paid by St. Paul . . . Morris . . . does hereby partially credit and release Largent from the legal liability and responsibility to pay the Judgment *to the extent of the St. Paul policy limits only*." (emphasis added). The receiver points out that the limit of the St. Paul policy is $1 million and that the settlement expressly releases Largent from liability only up to the value of that policy.

The receiver is correct as far as the amount of release is concerned. The amount of release contemplated by the settlement, however, is different from the amount of money actually paid toward the judgment. In an artfully-drafted

settlement agreement, those amounts would probably be identical.  But ¶13 provides,

> All parties . . . contemplate that *all the payments made to Morris and Minter pursuant to this Agreement are for damages received on account of personal physical injuries or physical sickness* within the meaning of Section 104(a)(2) and Section 130 of the Internal Revenue Code . . ., and no portion of those amounts represent punitive or exemplary damages.

(emphasis added).  A plain reading of the settlement indicates that although the receiver and Morris released Largent for only $1 million, Largent (*via* St. Paul) actually paid $1.9 million for compensatory damages in the judgment. Offsetting by only $1 million would allow the receiver a windfall double recovery of $900,000 not authorized by the settlement.  The district court, therefore, properly offset the judgment by the full $1.9 million.

The receiver argues that double recovery of the $900,000 surplus would not constitute a windfall, because St. Paul did not pay the surplus toward compensatory damages awarded in the state court judgment.  Rather, the receiver contends, the $900,000 constitutes a preemptive settlement of "bad faith" damages that St. Paul would have had to pay––independently of its insurance contract obligations––in some future lawsuit against the company. The receiver does not point to any language in the settlement agreement supporting that characterization of the $900,000.  Moreover, his position is directly contradicted by ¶13, which provides that the entire $1.9 million is payment for compensatory damages.

## IV.

In summary, to the extent that Great American's umbrella policy indemnifies Largent for exemplary damages, it violates Texas public policy under the facts of this case.  The district court properly offset the judgment by $1.9 million.  Accordingly, we AFFIRM IN PART, REVERSE IN PART, and

No. 09-10734

REMAND for recalculation of the judgment.[1]

---

[1] The receiver's motions to strike portions of the record and briefs are DENIED.